**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01324-MSK-NYW

GREG A. CLARKSON,

Plaintiff,

v.

UNIVERSITY OF DENVER, A Colorado Non-Profit Corporation,

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Defendant University of Denver ("DU") respectfully submits its Reply in support of its Motion for Summary Judgment.

**1. DU is Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim**

Plaintiff's arguments in support of his ADEA claim is based on a faulty legal principle: that an ADEA plaintiff "need not prove that age was the sole factor for the employment decisions, but that age made a difference." Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") at 5 (emphasis added). The U.S. Supreme Court in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) repudiated the principle that age discrimination may be proven by "mixed motives" evidence—ie. that the defendant was motivated at least in part by age animus. *See, e.g., Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) ("the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age

was simply a motivating factor." "A plaintiff alleging age discrimination must instead prove age was a "but for" cause of her termination.").[1]

In purporting to show "direct evidence" of age discrimination, plaintiff contends that his supervisor, Chad Burnham, "remarked that he thought plaintiff was 66 and wanted to know when Plaintiff was going to retire." Response at 5. This is a distortion of the record evidence. In his deposition, plaintiff speculated: "I think at the time he [Burnham] thought I was 66." Clarkson Depo. at 120:18 (Ex. I). Although plaintiff creates the misimpression that he was singled out, Burnham actually testified that, when he started his role as supervisor in 2013, he asked "[a]ll employees" about their "career goals and timelines," for purposes of "workforce management for [his] entire unit." Burnham Depo. at 77:15 – 80:7 (Ex. H); see *id*. at 78:21 – 79:1 ("It would have been me taking over as supervisor, and with each and every employee, I have these types of meetings, not just Mr. Clarkson, where an understanding of career path, career desire, career objectives would have been brought up."). Indeed, Plaintiff admitted that he "suspected strongly" that Burnham "was trying to find out how much longer I was going to be with DU or how much longer I planned to be with DU." Clarkson Depo. at 122:16-19 (Ex. A). In any case, plaintiff's attempt to manufacture an inference of discriminatory animus based on one comment allegedly made in 2013 is unavailing. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526 (10th Cir. 1994)

---

[1] *See also Bradley v. Denver Health and Hosp. Auth.*, 734 F. Supp. 2d 1186, 1208 (D. Colo. 2010) ("Prior to *Gross*, the employee could prevail if the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find that her dismissal was motivated at least in part by age discrimination. *Gross* changed the latter part of this formulation by eliminating the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases. Furthermore, the Tenth Circuit has explained that even at summary judgment it is not the employer's burden to negate any possible contributory role played by age in the challenged adverse action but, conversely, the employee's burden to show that age was the 'but for' cause of the action.") (internal citations and quotations omitted).

("isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus").

Plaintiff also mischaracterizes Burnham's use of the phrase "new talent" in his memorandum as implying that he wanted younger employees. Response at 6. To the contrary, the memorandum makes clear that Burnham was referring to hiring new recruits in an "ever difficult hiring market." 5.9.13 Interoffice Memorandum (Ex. D-15). The undisputed facts show that Burnham wrote a similar memorandum to his supervisors around the same time, in which he indicated that he needed "seasoned staff," and wanted a job title change "to foster new talent in an ever difficult hiring market in this increasingly complex field." 6.28.13 Interoffice Memorandum (Ex. D-16).

Plaintiff's argument concerning Karen Ornelas' and Mark Rinnert's purported complaints about Burnham does not support his implied proposition—ie. that Burnham discriminated against other older employees. Response at 5-6. Plaintiff has offered no evidence from Ornelas; he merely relies on conjecture and hearsay from Rinnert that Ornelas "was already planning to retire . . . And *that may have* factored in to how they decided to get rid of her position or whatever. *I don't know*." Rinnert Depo. at 7:2-6 (Ex. J) (emphasis added). As for Rinnert's supposed complaint about Burnham, Rinnert made clear that he believed he "got written up for asking questions about how to do my job. . . . I was not getting clear instruction as to how our policies were going to be changed and what was actually going to happen to merge these two departments." *Id*. at 11:17 – 12:4. Plaintiff has no evidence that Rinnert suffered, or complained about, age discrimination. In addition, anecdotal evidence concerning other employees, without any showing that they are similarly situated, is irrelevant and inadmissible. *Hardy v. Shell Chem. Co.*, 683 F. Supp. 2d 611,

622 (E.D. La. 2010) (granting summary judgment in favor of employer and holding that anecdotes about other employees "cannot establish that discrimination was a company's standard operating procedure" unless the employees are similarly situated to Plaintiff); *see also Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) (plaintiffs' anecdotal testimonies from former employees should have been excluded as incompetent because it forced Defendant to respond to each witness's claims and, in effect, created several "trials within a trial"); *Elston v. UPMC-Presbyterian Shadyside*, No. 2:06-cv-329, 2008 WL 682494, at *3 (W.D. Pa. Mar. 7, 2008) (holding that a "'mini-trial' regarding alleged discrimination in the maintenance department would distract the jury from the focal issue in [the] case").

Plaintiff makes much ado over Burnham's supposed inability to identify the qualifications for an engineer, other than experience and education. Response at 8-9. However, Burnham simply stated in his deposition: "I cannot recite all of those at this time," but referred plaintiff's counsel to the Engineer job descriptions. Burnham Depo. at 99:14 – 100:19 (Ex. H).

**a. <u>Failure to Promote</u>**

In his Response brief, plaintiff contends that DU discriminated against him by failing to promote him to an engineer position. This is contrary to plaintiff's deposition testimony:

> Q. . . . do you have any issues with your some of your colleagues getting promotions.
> A. No. I have – I begrudge my colleagues nothing.
> Q. This is not a promotion kind of case, right?
> A. Right.

Clarkson Depo. at 131:5-13 (Ex. A). Despite his clear testimony, plaintiff now seeks to shoehorn a promotion claim into this case. Nonetheless, although plaintiff insists that he possesses the requisite experience and qualifications to perform engineering functions, he admittedly has failed

to complete engineering tasks assigned to him over a 2-year period. Specifically, plaintiff was assigned a PerfSONAR server/service deployment project, which is typical of the type of projects routinely assigned to engineers. Burnham Decl. ¶10 (Ex. B). As plaintiff testified:

> Q. And were there two of those [PerfSONAR] servers that you were responsible for?
> A. There were supposed to be two of them established. I only managed to get one set up.

Clarkson Depo. at 138:20-24 (Ex. A). Plaintiff also admitted that, despite this deficiency being addressed in his annual evaluations over a two-year period, he continued to let the engineering task languish: "And it's still part of my evaluation and needs to be attended to. I admittedly have not done as much as I should have." *Id.*. at 139:20-22; 157:21-25 ("I had no reasonable excuse for why I did not complete the work with [PerfSONAR]").

Plaintiff claims that Burnham was "unable to state whether the individuals promoted over Plaintiff were more qualified or possessed more experience for an engineering position," (Response at 9), but the record citation provided by plaintiff simply does not support this proposition. In fact, it misrepresents the undisputed evidence: plaintiff does not have extensive or consistent experience in the technical aspects of an engineering job, including experience in "Carrier and PBX Telephony software programming and troubleshooting; Pinnacle software application administration; Telepresence; Telephony application server and Expressway application programming and advanced troubleshooting; and Call Center telephony server application programming and advanced troubleshooting." Burnham Decl. ¶9 (Ex. B). Rather than offer contrary evidence, plaintiff simply *insists* that he is qualified based on his personal belief and his own subjective, self-serving opinion of his skillsets. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 753–54 (10th Cir. 2000) (finding that the plaintiff's "personal belief that [his] replacement

was less qualified than he was" was insufficient to create a genuine issue of material fact regarding pretext); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (affirming summary judgment for employer upon concluding that the plaintiff's claim that she was as or more qualified than another employee who was retained for the position was insufficient; "[i]t is the perception of the decision maker which is relevant, not plaintiff's perception of herself"); *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").

In addition, although plaintiff claims he is equally or more qualified as compared to the individuals promoted to engineer (see Response at 8), his testimony makes clear that he has no knowledge of their qualifications and experience:

> Q. . . . [Y]ou have no idea about Mr. Conyers' qualification or experience or skill-sets, do you?
> A. Correct.
> . . .
> Q. And do you happen to know Mr. Mott's experience, qualifications, or background?
> A. I do not.

Clarkson Depo. at 77:8-23 (Ex. A). Indeed, based solely on his personal belief, plaintiff contends that Mott does not have a college degree (Response at 14) but admits that Mott "has been teaching at a c[ommunity] college." Final Investigation Report at 14, (Ex. D-23).[2]

---

[2] Plaintiff appears to claim that he was interested in Alex Khramov's position. Response at 12. It is not disputed that plaintiff lacked the requisite qualifications and experience for that Assistant Director position, and that he never applied for it because "he had no interest in [the] position." Clarkson Depo. at 74:5-18 (Ex. A). Although he made this an issue in the Response, plaintiff acknowledged that this issue "really wasn't a problem." *Id.* at 73:22 – 74:2.

Plaintiff's failure to promote claim flies in the face of his own admission that he had no interest in many of the positions at issue. In his statement to DU's Equal Opportunity office, plaintiff stated:

- "I would not have applied for the management position so that is not my concern."
- "James Conyers was an internal hire. I do not know if that position was posted or not. I would not have applied for that position."
- With respect to the position that went to Kenneth Harris: "I wouldn't have applied for this job if I knew about it."

Clarkson Statement at 1-2 (Ex. D-3).

**b. <u>Changes In Job Duties</u>**

Although plaintiff faults Burnham for changing certain aspects of his job, he testified that those job changes started as early as 2012 with his prior supervisor, Byron Early, with whom he had a good relationship. Clarkson Depo. at 25:19-24; 28:6-13; 59:59:5-20 (Ex. A). There is also no dispute that Burnham, the alleged discriminator, was directed by his supervisor, Cindy Crouch, to rewrite plaintiff's job description. *Id.* at 68:3-9. Plaintiff does not consider Crouch (or anyone other than Burnham) to have harbored discriminatory animus towards him. *Id.* at 41:1-15.

Notably, with respect to the job changes under Burnham, plaintiff testified that he did not "consider them to be a bad thing." *Id.* at 57:17-20. The job changes did not affect his pay or lower his job classification. *Id.* at 54:5-13. He had performed similar work in the past, and those duties were not beyond his capabilities. *Id.* at 52: 6-12. In fact, plaintiff testified:

Q. But did the job changes result in increased pressure in your job?
A. No, it decreased pressure.
. . .
Q. Some would say that's a good thing, right?
A. It could be. . . .

*Id.* at 57:25 – 58:7.

Plaintiff claims that those job changes resulted in a diminishment in his workload even though he was being compensated for a full-time workload. Response at 10. Plaintiff's testimony on this subject, however, is contradictory: "I had always dealt with a certain amount of software applications, but I didn't do it full time; and when I started doing it *full time*, it became a problem." *Clarkson Depo.* at 62:12-15 (emphasis added). Plaintiff admitted that, with the removal of the hardware duties, he was still a full time employee, "putting in a full-time workload." *Id.* at 62:22 – 63:1. Indeed, plaintiff could not explain what he meant by "reduction" of his duties, other than to maintain that "many technical aspects" of his job had been removed. *Id.* at 63:2-24.[3]

At bottom, plaintiff complains that the reassignment of his duties resulted in the removal of "certain aspects of my position that I did enjoy," to be substituted with software-related tasks, which he "didn't really care about," and which he found "tedious." *Id.* at 61:11-12; 51:15-23. Plaintiff considered the alleged reduction of duties to be "quite annoying," *id.* at 86:9, which hardly rises to the level of an adverse employment action.

**c. <u>Training Opportunities and Meetings</u>**

Contrary to plaintiff's assertions, he admitted that Burnham approved plaintiff's requests to attend multiple training sessions related to his job. SOF ¶ 22, 25-26.[4] Plaintiff's complaint

[3] Although plaintiff contends in his Response that his hardware-related responsibilities "have been removed and given to younger workers" (Response Br. at 9), he actually testified: "I was no longer being assigned the hardware analytical tasks; and to where they went, I really do not know." Clarkson Depo. at 52:13-18 (Ex. A).

[4] In his statement to DU's Equal Opportunity office, Plaintiff identifies an extensive list of trainings he had undergone. Clarkson Letter to Grove at 1 (Ex. D-4).

essentially is that he "could not attend any seminar that did not directly deal with work [he] was currently performing." Responses to Interrogatory 15 (Ex. F). That plaintiff was not approved to attend seminars and meetings *outside the scope of his job duties* does not amount to a material adverse action. *See Casey v. Mabus*, 878 F. Supp. 2d 175, 184 (D.D.C. 2012) ("The mere denial of training opportunities, however, does not constitute an adverse employment action."). With respect to meetings, plaintiff mainly points to MPLS meetings, which he contends other analysts were allowed to attend. Response at 13. He admits, however, that those analysts did not attend all of the meetings, and that he had no knowledge whether they performed MPLS-related duties. Clarkson Depo at 94:21 – 95:13 (Ex. A). Plaintiff does not dispute that his job "did not have anything to do with MPLS." *Id.* at 95:11-13.[5]

In attempting to establish pretext, plaintiff argues that DU used "vague and subjective standards." Response at 15. That is not supported by the undisputed facts. Burnham referred plaintiff to the detailed Engineer job descriptions, and provided testimony concerning the qualifications and experience of the individuals selected for the positions. *E.g.* Burnham Depo. at 156:14 – 157:17; 136:24 – 138:5 (Ex. C). The only thing vague and subjective is plaintiff's own testimony. Relying solely on his own conclusory, self-serving assertions, he claims that DU promoted "less qualified and less educated" younger employees to engineering positions. *Bouchard v. Whetstone*, 772 F. Supp. 2d 1352, 1355 (D. Colo. 2011) ("[C]onclusory statements

[5] Although plaintiff contends that he was excluded from Thursday afternoon meetings, he could not dispute that those meetings related to MPLS, which was not part of his job: "Because I was not at the meetings, I do not know what they were about." Clarkson Depo. at 147:7-22 (Ex. I); SOF ¶24. Plaintiff also claims that he was "removed from the meeting notification mailing lists," (Response at 12) but has no evidence to controvert Burnham's testimony that several employees, including plaintiff, were inadvertently left off the "calendar invite." Burnham Depo. at 110:18 – 111:1 (Ex. C).

and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.”). Remarkably, plaintiff insists that he “can establish that he was a satisfactory performer through his *own testimony* and evidence that he held his position for a significant time.” Response at 15 (emphasis added). Putting aside his misunderstanding of the law regarding reliance on conclusory, subjective, self-serving testimony, plaintiff does not explain how holding his Analyst position for a significant time has any bearing on his qualifications for the Engineer position.

That plaintiff’s claim is predicated on conjecture is perhaps nowhere more evident than his statement that “Defendant’s actions *may have been* taken because of his age . . ..” Response at 17 (emphasis added). His speculation-based age discrimination claim should be dismissed.

**2. <u>DU Is Entitled To Summary Judgment On Plaintiff’s Disability Discrimination Claim</u>**

Plaintiff begins his analysis of his disability discrimination claim with: “[the] evidence will show that [DU’s actions] *could have also been* taken because of Plaintiff’s disabilities.” Response at 17 (emphasis added); Compl. ¶87, Dkt #1. This equivocal, conjectural assertion does not qualify as competent evidence sufficient to defeat summary judgment.

Plaintiff alleges the same adverse actions in his age discrimination claim to support his ADA claim. For the same reasons articulated in the previous section, plaintiff’s ADA claim should be dismissed. Plaintiff’s disability claim suffers from an additional infirmity: plaintiff contends that Burnham learned about his depression in December 2014. Response at 18; Compl. ¶98, Dkt. #1. By December 2014, the alleged adverse actions had already occurred, including the promotions, plaintiff’s job changes, and the MPLS meetings from which he claims to have been excluded.

With respect to plaintiff's dyslexia, he claims that Burnham was informed of his condition "no later than May 2015." Response at 18. However, plaintiff complains that Burnham "chided [him] regarding his spelling," when he first became Director in 2013. Clarkson Depo. at 170:17 – 171:13 (Ex. I). There is simply no causal nexus between the comments surrounding plaintiff's spelling and Burnham's knowledge of plaintiff's dyslexia. Further, although plaintiff characterizes his treatment as being "chastised" (Response at 19, citing Burnham Depo. at 22:13-16), the record citation reveals that Burnham merely discussed his "concerns" about plaintiff's spelling, and urged him to "use spell check" and to "double check" his work. Burnham Depo. at 22:24 – 23:13 (Ex. C). Indeed, far from being chided, plaintiff himself describes his spelling errors as being the subject of banter at the office: "It was a common joke at the meeting table that my spelling was inappropriate." Clarkson Depo at 171:6-7 (Ex. I).

Plaintiff contends that Burnham was instructed by his supervisor, Cindy Crouch, to "document[] Plaintiff's alleged performance issues and keep[] track of [his] 'odd behavior.'" Response at 19. Burnham's uncontroverted testimony is that, at that time, plaintiff was exhibiting "odd behavior"—including showing up for work on a Sunday, having "forgot[ten] what day of the week it was"; and mistakenly believing that he had "people reporting to him"—which Crouch and Burnham found "concerning." Burnham Depo. at 182:13 – 184:2 (Ex. H). Although plaintiff considers Burnham's action discriminatory, it is undisputed that the instruction to "keep track" of plaintiff's odd behaviors came from Crouch, whom plaintiff does not accuse of discrimination or retaliation. *Clarkson Depo* at 41:1-15 (Ex. A). Further, taking note of an employee's erratic behavior is not akin to a materially adverse employment action.

### 3. <u>DU Is Entitled To Summary Judgment On Plaintiff's Failure to Accommodate Claim</u>

In a complete reversal of his case theory and allegations, plaintiff now contends that his failure to accommodate claim is premised on DU's failure to accommodate his depression and dyslexia, not his back injury. *But see* Compl. ¶¶109-114. Despite plaintiff's extensive post-hoc recitation of the possible accommodations that could have been provided to him (Response at 21-22), it is undisputed that plaintiff never requested any accommodation from DU for his depression or dyslexia—even though he concedes that he "understood he had the opportunity to do that at DU." Clarkson Depo. at 158:1-16 (Ex. A).

Incredibly, Plaintiff faults DU for not proactively initiating and exploring possible accommodations with him for his depression and dyslexia. However, plaintiff's insistence (without any legal citation) that "[i]t was not incumbent upon Plaintiff to request specific accommodations" simply misstates the law. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171–72 (10th Cir. 1999) (The interactive process must "begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for [accommodations]"); *Hines v. Chrysler Corp.*, 231 F. Supp. 2d 1027, 1040 (D. Colo. 2002) ("The employee must initiate the interactive process by notifying the employer of her disability, limitations resulting from her disability, and her desire [for accommodations]"). Mere knowledge of the employee's disability is not sufficient to place the employer on notice that the employee needs an accommodation and trigger the employer's duty to engage in the ADA's interactive process. *Dinse v. Carlisle Foodserv. Prods. Inc.*, F41 F. App'x 885, 890 (10th Cir. 2013) (holding that "the employee must make an adequate request for a reasonable accommodation

for the disability," and that the employer "is under no legal obligation to [make accommodations] absent such an employee request").

Plaintiff also alleges that DU's failure to accommodate caused him to suffer the previously-discussed adverse actions. Response at 20. However, those alleged adverse actions had occurred *prior to* DU's knowledge of his medical conditions.[6] This claim undercuts plaintiff's age and disability discrimination claims in that plaintiff essentially argues that "the symptoms of his disabilities" (such as his poor spelling, his concerning behaviors and other performance issues) led to his being passed over for promotions, his exclusion from meetings and his job changes. If DU was motivated by the outward manifestations of plaintiff's disabilities without knowledge of the existence of those disabilities at the time of the complained-of actions, there can be no actionable discrimination. *See Ewing v. Doubletree DTWC LLC*, 673 F. App'x 808, 812 (10th Cir. 2016) (affirming summary judgment for Defendant and holding that Plaintiff, who claimed Defendant discriminated her by terminating her employment due to her substandard performance, failed to establish prima facie case of discrimination because she failed to prove Defendant's knowledge of her mental disability); *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1296 (10th Cir. 2016) (holding that because the public school security officer did not place the student in handcuffs due to his autism, but rather due to his disruptive behavior, Plaintiff was precluded from alleging any claims that the school discriminated against the student due to his disability in violation of the ADA).

[6] Plaintiff's assertion that Burnham knew about his disabilities and continued to treat him adversely is simply not supported by his citation to the record. Response at 20. It is undisputed that the job changes, promotions and other alleged adverse actions had occurred before December 2014 when plaintiff informed Burnham about his dyslexia. Response at 18.

Despite plaintiff's efforts to manufacture a failure to accommodate claim, his own testimony puts to rest any notion that Burnham was acting out of any knowledge of his disabilities:

> Q. Are you contending that Mr. Burnham failed to accommodate any of your medical issues?
> A. Yes, sir. I feel that Mr. Burnham was not aware of my issues going into the position, and I think unintentionally he put undue stress on me to affect change or for whatever reason. I don't know.

Clarkson Depo. at 155:19 – 156:1 (Ex. A).[7]

### 4. <u>DU Is Entitled To Summary Judgment On Plaintiff's Retaliation Claim</u>

The adverse actions alleged by plaintiff simply do not amount to materially adverse actions that would dissuade a reasonable person from complaining about discrimination. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 71 (2006). Specifically, in addition to the previously-discussed alleged adverse actions,[8] plaintiff complains that his coworkers "became quieter" after he complained about discrimination, although he does not know whether Burnham was involved in the "silent treatment." Clarkson Depo. at 173:17-25; 174:5-7 (Ex. I). Even drawing all inferences in favor of plaintiff, such snubbing or uncivil conduct by coworkers does not rise to the level of a materially adverse action. *Johnson v. Weld County,* 594 F.3d 1202, 1216 (10th Cir. 2010). Plaintiff also considers his denial of vacation to be retaliatory. There is no dispute, however, that Burnham was required to have "all hands on deck" for the return-to-school

[7] Although plaintiff claims that Burnham "increased his stress levels (Response at 18), he forgets his own testimony that his job became "less stressful" when Burnham modified his job duties.

[8] Although being passed over for promotions may be material, Plaintiff's failure to be promoted to jobs which he was not interested in, or had not applied for, or was admittedly not qualified for hardly qualifies as materially adverse. In addition, his job changes resulted in a lower pressure job for him, without any cut in pay or change in job classification. That he found the job changes "annoying" indicates that the action was not material.

period, and plaintiff's vacation was delayed by a week, a solution to which plaintiff agreed. Clarkson Depo. at 164:17 – 167:6 (Ex. A). A one-week delay in plaintiff's vacation is not materially adverse.[9]

In addition to lacking materiality, plaintiff's retaliation claim fails because there is no causal connection between the alleged adverse actions and his protected activities. There is no genuine dispute that the alleged adverse actions had transpired before plaintiff's first discrimination complaint in August of 2014. To maneuver around this undisputed fact, plaintiff contends that, after his complaints, Burnham "removed even more duties, hired younger personnel . . . and commented on Plaintiff's review that he couldn't spell . . .." Response at 26. Plaintiff makes these assertions without any record support.

Plaintiff's own testimony conclusively establishes that he suffered no adverse action *as a result of* complaining about discrimination:

> Q. . . .[W]e've talked about all the bad things that happened to you at DU. Now all those things took place or at least originated at the time prior to you going to the Office of Equal Opportunity, true?
> A. Yes.[10]
> Q. In fact, that was the reason why you went to the Office of Equal Opportunity?
> A. Yes.
> Q. And after going to the Office of Equal Opportunity and after filing your EEOC charge, things remained the same?
> A. Yes.

[9] Plaintiff's assertion that "Burnham advised the investigator that he might have to begin discussing Plaintiff's performance issues with HR" (Response at 26) is a distortion of the record. Burnham simply stated: "Greg [Clarkson] doesn't take notes or write things down. He has trouble remembering things. I have not talked to HR about these concerns and I probably should have done so prior to now." Final Investigation Report at 7(Ex. D-23).

[10] Plaintiff does not dispute that he went to the Office of Equal Opportunity for the first time in August 2014. Clarkson Depo. at 172:22 – 173:9 (Ex. I).

Q. But you can't tell me of anything in addition or anything different; is that right?
A. Standing in a hallway by yourself is standing in a hallway by yourself.
Q. But that happened before, true?
A. Yes.

Clarkson Depo. at 175:18 – 176:11 (Ex. I). Given that the alleged adverse actions occurred prior to plaintiff's discrimination complaints, plaintiff's retaliation claim lacks the requisite causal connection and must be dismissed.

**5. <u>DU Is Entitled To Summary Judgment On Plaintiff's "Inadequate Investigation" Claim Under Title VII.</u>**

Plaintiff brings a standalone claim under Title VII for "inadequate investigation." This claim is facially defective because plaintiff has not alleged any violation based on characteristics protected under Title VII: race, color, religion, sex and national origin. To the extent that plaintiff seeks to insert a new claim based on a new protected characteristic, such a claim has not been administratively exhausted and must be dismissed. *Lu v. Kendall*, 561 F. App'x 751, 754 (10th Cir. 2014) (holding that employee failed to exhaust her remedies in employment discrimination action as required by ADEA and ADA); *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002) (exhausting administrative remedies under the ADA is a "jurisdictional prerequisite to suit in the Tenth Circuit") (citations omitted).

Recognizing the deficiency in his claim, plaintiff now pivots to the position that "[e]ven if this does not stand as a separate claim, it supports an inference of pretext." Response at 28. Assuming plaintiff may belatedly insert this allegation of inadequate investigation to show pretext for age and/or disability discrimination, he has no evidence that the investigation—assuming all its alleged flaws—was a departure from DU's investigations into other employee complaints; nor does he have any evidence that the investigation was conducted in a manner that renders DU's

proffered non-discriminatory reasons unworthy of credence. Plaintiff's attempt to equate alleged flaws in an employer's investigation to intentional discrimination, thus shortcutting any proof of actual discrimination, must be rejected.

Respectfully submitted this 12th day of July, 2017.

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*s/ Jim Goh*
Jim Goh
Heidi K. Wilbur
600 17th Street, Suite 2700S
Denver, CO 80202
Telephone: 720-343-7570
Facsimile: 720-343-7571
jgoh@constangy.com
hwilbur@constangy.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2017, I electronically filed the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Charles W. Hemphill
cwh@hemphillawfirm.com

Attorney for Plaintiff

*s/ Samantha Roth*
Samantha Roth, Paralegal